IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Maritza Dominguez Braswell**

Civil Action No. 24–cv–02895–RMR–MDB

ACADEMY SCHOOL DISTRICT 20,

    Petitioner,

v.

V.B., a minor, by and through her parents and next friends,
LEAH BROYLES, and
RONNIE BROYLES

    Respondents.

# ORDER

This matter is before the Court on Petitioner's Motion for Leave to Submit Additional Evidence.[1] (["Motion"], Doc. No. 22.) Respondents have filed a response in opposition (["Response"], Doc. No. 25) to which Petitioner has replied (Doc. No. 28.) The Court held a Motion Hearing on November 10, 2025. (Doc. No. 37.) After reviewing the Motion, briefing, oral argument, and relevant law, the Motion is **GRANTED in part and DENIED in part**.

## BACKGROUND

---

[1] Also before the Court is Petitioner's Motion for Leave to Depose Dr. Laura Wo, Dr. Sara, Anderson, and Dr. Papatonakis and to Issue Subpoenas for an Evidentiary Hearing. (["Subpoena Motion"], Doc. No. 20.) However, because the Subpoena Motion's request is remade in the Motion, (*see* Doc. No. 22 at ¶ 21), and addressed here, *see infra* at 10–12, the Court declines to separately address the Subpoena Motion.

V.B. is a minor child in Academy School District 20 (the "District"), who lives with significant mental and physical disabilities that affect all aspects of her life. (*See generally* Doc. No. 1.) The District is responsible for providing V.B. with a Free and Appropriate Public Education ("FAPE") under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400, *et seq*, by developing an Individualized Education Plan ("IEP") for V.B. (*Id.*) The District developed V.B.'s IEP on September 29, 2023, recommending placement at Discovery Canyon Campus Elementary School with extensive special education, related services, supplemental aids and services, a paraeducator, and one-on-one nursing services. (*Id.* at ¶¶ 98–101; Administrative Record ["AR"] 666–67.)

On February 15, 2024, V.B.'s parents filed a Due Process Complaint alleging the District's IEP violated V.B.'s rights under the IDEA and constituted a failure to provide FAPE. (AR 1–22; *see* AR 60–80 (the Amended Due Process Complaint, filed March 14, 2024).) A hearing was convened before an ALJ from June 3 to June 6, 2024. (AR 297) On July 22, 2024, the ALJ issued a decision, finding that the District failed to provide V.B. with FAPE by, among other things, failing to justify a dramatic departure from prior placements, creating goals inconsiderate of V.B.'s individual circumstances, and denying homebound placement based on a district policy that too narrowly interpreted regulations and was inconsistent with case law. (AR 296–311.) The ALJ also found "no evidence that the District considered the medical information it was provided…except to inform V.B.'s doctors why the District would not comply with their recommendations that V.B. receive her instruction at home." (AR 309.)

In this action, the District seeks review of the ALJ's decision, and in this Motion it asks to submit the following additional evidence:

2

- Exhibit 1: A September 19, 2023, evaluation report for V.B. (Doc. No. 22-1.)

- Exhibit 2: Section I of the District's policy on Education of Children with Disabilities Under Individuals with Disabilities Education Act, Exceptional Children's Education Act, and Section 504 of the Rehabilitation Act of 1973. (Doc. No. 22-2.)

- Exhibit 3: The District's "Guide to Temporary Homebound Support." (Doc. No. 22-3.)

- Exhibit 4: The affidavit of Jaleesa Steward. (Doc. No. 22-4.)

- Exhibit 5: The affidavit and daily monitoring Service Logs of Susan DiBlasio. (Doc. No. 22-5.)

- Exhibit 6: The affidavit and daily monitoring Service Logs of Daina Penny. (Doc. No. 22-6.)

- Exhibit 7: The affidavit and daily monitoring Service Logs of Kaleigh Arthur. (Doc. No. 22-7.)

- Exhibit 8: The affidavit and daily monitoring Service Logs of Marcia DeJong. (Doc. No. 22-8.)

- Exhibit 9: The affidavit and daily monitoring Service Logs of Tami Beckman. (Doc. No. 22-9.)

- Exhibit 10: The affidavit, daily monitoring Service Logs and Contact Logs of Brooke Godwin. (Doc. No. 22-10.)

- Exhibit 11: Documents from the Broyles' DORA complaint against a District nurse. (Doc. No. 22-11.)

- Exhibit 12: The affidavit of Stephen Scott and images from the IEP meeting. (Doc. No. 22-12.)

The District also seeks leave to depose Drs. Laura Wo, Sara Anderson, and "Papatonkis,"[2] and to subpoena them for an evidentiary hearing. (Doc. No. 22 at 9.)

---

[2] The Court did not find Dr. Papatonkis's first name in the parties' briefing.

Respondents are unopposed to the admission of Exhibits 1 through 3, but oppose the District's remaining requests. (*See* Doc. No. 25.)

## LEGAL STANDARD

The IDEA allows a party aggrieved by an administrative decision to "bring a civil action . . . in a district court of the United States." 20 U.S.C. § 1415(i)(2)(A). Pursuant to the IDEA, district courts "shall receive the records of the administrative proceedings . . . [and] shall hear additional evidence at the request of a party." 20 U.S.C. § 1415 (i)(2)(C)(i)-(ii). The court's review of an ALJ's decision is a modified de novo review, meaning the court must "independently review the evidence contained in the administrative record, accept and review additional evidence, if necessary, and make a decision based on the preponderance of the evidence, while giving 'due weight' to the administrative proceedings below." *Murray v. Montrose Cnty. Sch. Dist. RE-1J*, 51 F.3d 921, 927 (10th Cir. 1995).

In *Murray*, the Tenth Circuit recognized a circuit split in interpreting the IDEA's requirement that a district court "shall hear additional evidence." *See id*. at 931 n.15. Some courts, including the First and Ninth Circuit, apply a restrictive approach—known as the Burlington standard—and only permit evidence that is "supplemental" in nature. *Id.*; *see also Town of Burlington v. Dep't of Educ.*, 736 F.2d 773 (1st Cir. 1984); *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467 (9th Cir. 1993). By contrast, the Sixth Circuit has adopted a broader view. *See Metro. Gov't of Nashville & Davidson Cnty., Tenn. v. Cook*, 915 F.2d 232, 234 (6th Cir. 1990).

Although the *Murray* court did not resolve the circuit split, courts in this District apply the *Burlington* standard. *See, e.g., L.S. v. Calhan Sch. Dist. RJ-1*, 2016 WL 541005, at *2 (D.

Colo. Feb. 11, 2016); *see also L.B. ex rel. K.B. v. Nebo Sch. Dist.*, 379 F.3d 966, 974 (10th Cir. 2004) ("Although the district court may accept additional evidence, such evidence is merely supplemental to the administrative record.") (citing *Ojai*, 4 F.3d at 1472–73). Under the *Burlington* standard, "additional evidence" means evidence that is "supplemental to the administrative record." *L.B.*, 379 F.3d at 974; *Burlington*, 736 F.2d at 790 ("[T]he source of the evidence generally will be the administrative hearing record, with some supplementation at trial."). Though "[t]he reasons for supplementation will vary," they may include "gaps in the administrative transcript owing to mechanical failure, unavailability of a witness, an improper exclusion of evidence by the administrative agency, and evidence concerning relevant events occurring subsequent to the administrative hearing." *Burlington*, 736 F.2d at 790. Ultimately, "the district court has discretion to determine if such additional evidence is necessary." *O'Toole v. Olathe Dist. Sch. Unified Sch. Dist. No. 233*, 144 F.3d 692, 708 (10th Cir. 1998). However, the "court's proceedings must maintain the character of review and not rise to the level of a *de novo* trial." *L.B.*, 379 F.3d at 974.

## ANALYSIS

**I.     Exhibits 1–4**

According to the District, Exhibits 1 through 3 were admitted by the ALJ during the administrative hearing on Respondents' complaint, but the ALJ's decision does not indicate the Exhibits were included in the record. (*See* Doc. No. 22 at ¶¶ 17, 19(a)–(c).) Respondents agree with the District's representation, and do not oppose the submission of Exhibits 1 through 3 in this matter. (Doc. No. 25 at 6.) The Court likewise agrees it is appropriate to admit Exhibits 1 through 3.

5

Exhibit 4 is the "[a]ffidavit of Jaleesa Steward affirming the authenticity of [Exhibits 2 and 3]." (Doc. No. 22 at ¶ 19(c).) The District says the affidavit "fills gaps" in the record and would remedy apparent confusion in the ALJ's order by clarifying "the distinctions between[,] and the circumstances under which[,] the admitted but missing or misapplied policies, guidelines, and procedures of homeschooling, temporary homebound, and IEP placements properly apply within the context of the District's obligation to provide FAPE within the LRE pursuant to the IDEA as addressed in this case." (Doc. No. 22 at ¶ 19(d), Doc. No. 28 at ¶ 5.) Respondents disagree and object to the admission of Exhibit 4. According to them, the District merely seeks to use the affidavit to "embellish" hearing testimony. (Doc. No. 25 at 6.)

The Court is sympathetic to Respondents' concern that Exhibit 4 is bootstrapping or embellishing. But Exhibit 4 does not appear to contain any substantive facts or evidence beyond what is already in the record. Thus, the risk of prejudicial embellishment is quite low. Moreover, the parties appear to agree that the ALJ's order reflected some confusion over the manner in which certain policies interact with the District's obligations. Thus, the affidavit would be helpful (and perhaps necessary) to an informed review of the ALJ's decision, and a fair consideration of Exhibits 2 and 3 which are addressed in Exhibit 4.

Because the parties agree on Exhibits 1-3, and Exhibit 4 simply aids in contextualizing the administrative record for proper judicial review, the Court grants the Motion insofar as it relates to Exhibits 1 through 4.

## II. Exhibits 5–10

Exhibits 5 through 10 are the affidavits and logs of individuals who have provided V.B. with services *subsequent to* the ALJ's order. (Doc. Nos. 22-5; 22-6; 22-7; 22-8; 22-9; 22-10.)

6

Exhibits 5 through 7 detail the homebound educational services provided to V.B. and include daily logs describing the educational activities conducted, V.B.'s progress, parent communication, and the provider's observations. Exhibits 8 through 10 detail the school nursing services offered to V.B. and include logs describing the nurse's contacts with Respondents. In its Motion, the District does not establish how Exhibits 5-10 are relevant. (*See generally* Doc. No. 22.) The District describes the Exhibits, and it states in conclusory fashion that they are relevant, but there is no discussion of how they would be relevant or what they would be relevant to. (*Id.* at 8-9.) And while the District's Reply attempts to articulate the Exhibits' relevance, those arguments are too little too late. *See Ulibarri v. City & Cnty. of Denver*, 742 F. Supp. 2d 1192, 1218 (D. Colo. 2010) ("[A]rguments raised for the first time in a reply may be disregarded." (citing *Hill v. Kemp,* 478 F.3d 1236, 1250 (10th Cir. 2007); *United States v. Murray,* 82 F.3d 361, 363 n.3 (10th Cir. 1996))). And even assuming the District made those arguments sooner, the Court is not persuaded.

The District's reply argument is underdeveloped and difficult to follow. However, as the best the Court can tell, the District argues these Exhibits should be admitted because they "describe the nature of the educational and related services the District is providing after the hearing and in doing so illustrate *the District's ability to satisfy its obligation* to provide V.B. a FAPE in the LRE in school." (Doc. No. 28 at 5 (emphasis added).) However, whether the District had the "ability" to satisfy its obligations, is not the relevant inquiry. The relevant inquiry is whether the District did indeed satisfy its obligations during the relevant time frame, and more specifically, whether the ALJ erred when she determined the District did not satisfy its obligations. In other words, even if the District could prove that post-hearing the District is

7

capable of satisfying its obligations in-school, that fact does not bear on whether or not Defendant did or did not provide FAPE pre-hearing.[3]

Likewise, the decision to decline nursing services and evidence of V.B.'s stable health, are not particularly relevant. The absence of a medical crisis does not establish that nursing services were unnecessary to provide FAPE; it only shows that Respondents managed V.B.'s needs without them. This is particularly true when V.B.'s greatest risk is communicable disease. The fact that V.B. has mostly avoided infection during her *in-home placement* says very little about whether this would have been the case in a more populous environment.

Moreover, the Court agrees with Respondents that admission of Exhibits 5 through 10 would invite extensive side litigation over their accuracy, reliability, and interpretation, which runs the risk of improperly converting this into a *de novo* review.

Accordingly, the Motion is denied as it pertains to Exhibits 5 through 10.

## III.  Exhibit 11

Exhibit 11 is the "DORA compliant filed by [Respondents] against a District school nurse, the District's Response to the complaint, and the dismissal of it." (Doc. No. 22 at ¶ 19(k).) According to the District, this evidence concerns the ALJ's finding that there was "no evidence that the District considered the medical information it was provided." (Doc. No. 22 at 9.)

---

[3] The Court recognizes that post-hearing evidence of academic progress is sometimes relevant to show that prior performance issues were due to FAPE deprivation. *See, e.g.*, *J.G., v. Sch. Dist. 49*, 2025 WL 3140340, at *1 (D. Colo. Nov. 10, 2025). But this is not those cases. Typically, the post-hearing evidence is used to show the student is thriving *with* FAPE, which tends to show their prior failure to thrive was causally connected to the denial of FAPE. However, here, the District seeks to use post-hearing evidence to show FAPE might have been achieved in a less restrictive placement. This necessarily invites conjecture and speculation as to how V.B. might perform in a less restrictive environment.

Specifically, they say the DORA complaint was filed after the school nurse spoke with physicians, and in response to the nurse seeking and using medical information in V.B.'s D20 IEP. (Doc. No. 22 at 9.) According to the District, Petitioners cannot now claim that the nurse (or the District) failed to consider medical evidence, when they previously punished the nurse for using medical information. (*Id.*) The District further argues that Exhibit 11 supplements Mr. Broyles' testimony about the DORA complaint. (Doc. No. 28 at ¶¶ 8–9.)

The District's arguments miss the mark. There is no indication that the DORA complaint was filed to punish the nurse for accessing or using medical information. To the contrary, the District admits in its Motion that, "the Parents filed a DORA complaint against [the nurse's] license *because the nurse 'claim[ed] authority…to overrule medical guidance.'*" (Doc. No. 22 at 9 (quoting AR 521).) In other words, the DORA complaint was filed for the very same reason the ALJ ruled against the District: the District allegedly did not appropriately consider the medical guidance.

Moreover, by Petitioner's own admission, Mr. Broyles testified about the DORA complaint and thus, Petitioner had an opportunity to seek admission of these materials. It did not. This proceeding cannot serve as a second bite at the apple, particularly where admission of a separate complaint, investigation, and outcome runs a meaningful risk of extending this proceeding far beyond the intended review. *See L.B.*, 379 F.3d at 974.

## IV. Exhibit 12

Exhibit 12 is the "[a]ffidavit of IEP meeting participant Stephen Scott and images of the charting of the CDE Facilitator leading the meeting." (Doc. No. 22 at ¶ 19(l).) The District

9

argues it will fill gaps and demonstrate the District worked collaboratively with Respondents and an "impartial CDE facilitator" to develop the IEP. (*Id.*; Doc. No. 28 at ¶ 10.)

But as the District itself notes, the record is full of references to the seven meetings held with Respondents and a CDE facilitator. (Doc. No. 28 at ¶ 10 (collecting citations to the record).) Moreover, there appears to be no dispute that Mr. Scott testified during the administrative hearing, including about the presence of a CDE facilitator during the IEP meetings. (*See* Doc. No. 25 at 8.) The District is free to argue that the ALJ improperly characterized, or otherwise ignored, evidence that the District worked cooperatively with Respondents, but it would be cumulative and improper embellishment to admit Exhibit 12. Thus, the Motion is denied with respect to this Exhibit.

V. **The District's Request to Depose and Subpoena Drs. Wo, Anderson, and Papatonakis**

Finally, the District seeks leave to depose V.B.'s medical providers—Drs. Wo, Anderson, and Papatonakis—and to subpoena them for an evidentiary hearing. (Doc. Nos 20; 22 at ¶ 21–22.) The parties agree these providers did not testify during the administrative hearing. (Doc. No. 22 at ¶ 22; Doc. No. 25 at 15.) They further agree that recommendations submitted by these providers were admitted into the record and the ALJ relied on them in reaching her decision. (Doc. No. 22 at ¶ 22; Doc. No. 25 at 10–11.)

Petitioner says Respondents unfairly hid the ball from the District by endorsing Drs. Anderson and Papatonakis as witnesses and subpoenaing them, but failing to call them during the hearing. (Doc. No. 22 at ¶ 22.) It further argues that without the testimony of V.B.'s providers, their recommendations are "missing important context regarding the[ir] role ... when it comes to determining the IEP placement." (*Id.*; Doc. No. 28 at ¶ 17.)

10

Respondents argue that (a) they were entitled to make a strategic choice not to call certain endorsed witnesses, and (b) the District was entitled to call any of V.B.'s providers but chose not to. (Doc. No. 25 at 9–10.) Respondents further argue that the District fails to adequately explain how the doctors' testimony would supplement their recommendations. (*Id.*)

At the outset, the Court notes that the District concedes Dr. Wo was neither endorsed nor subpoenaed by Respondents. (Doc. No. 22 at ¶ 10.) If the District sought to subpoena Dr. Wo, it could have. As to the witnesses that were endorsed and subpoenaed, it is undisputed that the District never objected to Respondents' failure to call these witnesses, nor did the District alert the ALJ that failure to call the witnesses risked an incomplete record, nor did the District ask the ALJ for an opportunity to call the witnesses itself, upon learning Plaintiff would not call them. Thus, the District's argument was waived, *see United States v. Vargas*, 720 F. App'x 471, 473 (10th Cir. 2017) ("An appellate issue is forfeited when it is not timely asserted in [the lower] court"), or at a minimum, unpersuasive.

Moreover, and even assuming away these procedural hurdles, the District does not articulate how the depositions would properly supplement the record. (*See, e.g.*, Motion Hearing Record at 11:31:30–11:33:20 (the Court asking, "what testimony do you plan to elicit from [the doctors] that you think supplements the record?" and the District simply responding, in relevant part, "much of this case hinges [on the doctor's recommendations]" and "their testimony would be limited to the information [in the recommendations]" without further explanation).) The District has not identified any ambiguity in the existing recommendations, any factual gap in the record, or any specific issue on which testimony would materially aid the Court's review. Generally stating that these witnesses would offer context, is not enough. *Burlington*, 736 F.2d at

790 (recognizing that "supplemental" evidence should not "embellish" or "repeat" evidence already admitted).

## CONCLUSION

For the foregoing reasons, the District's Motion for Leave to Submit Additional Evidence (Doc. No. 22) is **GRANTED** with respect to Exhibits 1 through 4 and **DENIED** in all other respects. It is further

**ORDERED** that Petitioner's Motion for Leave to Depose Dr. Laura Wo, Dr. Sara, Anderson, and Dr. Papatonakis and to Issue Subpoenas for an Evidentiary Hearing (Doc. No. 20) is **DENIED as moot**.

Dated this 16th day of January, 2026.

**BY THE COURT:**

_____
Maritza Dominguez Braswell
United States Magistrate Judge